## Citizens Bank of Johnston City, Illinois, Appellant, v. John E. Carr, Appellee, Impleaded with Flora Carr.

### (Not to be reported in full.)

Appeal from the Circuit Court of Williamson county; the Hon. BENJAMIN W. POPE, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed July 21, 1915.

### Statement of the Case.

Action by Citizens Bank of Johnston City, Illinois, against John E. Carr, impleaded with his wife, Flora Carr, on a promissory note. From a judgment for defendant, plaintiff appeals.

Appellant was a banking institution located at Johnston City. Ed Duncan was president of the bank and Mark Duncan, his son, cashier. On September 15, 1909, appellee, who was a stockholder and depositor of the bank, obtained a loan from appellant and gave the note in question for $3,000, due ninety days after date, with his wife, Flora Carr, as surety. At the time the note was given, appellee owned stock in the bank and kept a checking account. He made deposits from time to time, drew checks against his account, and, it seemed, paid little attention to his account. He was also president of a private bank at Loogootee, Illinois. Rex Duncan, another son of Ed Duncan, was the cashier of appellee's bank at Loogootee. Prior to the time of bringing this suit the bank requested appellee to reduce his overdraft. Appellee denied that he had an overdraft at the bank and, upon investigation, it was found that there were charged to his account many items which he claimed he had never authorized and of which he had no knowledge. Appellee denied that he authorized charging of the various items to his account, and denied that he received any credit for or

benefit from the money sent to his bank at Loogootee at the request of Rex Duncan, the cashier.

In August, 1911, appellee paid appellant $1,000, and later he transferred to it eighteen shares of bank stock for the sum of $1,800, for which he was to receive credit. There were also dividends on the stock he transferred amounting to $72, and dividends on other stock which he held amounting to $60, which were placed to his account, and he claimed to be entitled to credit for fire and burglary insurance paid by him for the benefit of the bank amounting to $82.36. The total sum thus paid by him amounted to $3,014.36. Appellant admitted the receipt of the $1,000 in money, the $1,800 for the bank stock, dividends amounting to $132, and did not dispute the claim for money paid for burglary and fire insurance, but stated that no claim was ever made for those items. Appellant contended, however, that the $1,000 was to pay a note held by Ed Duncan for money loaned by him to appellee and that the other money was to apply on the overdraft of appellee.

The principal questions were the correctness of appellee's account as kept by the bank and whether the payments made by appellee should be applied on the note or the overdraft, if there was an overdraft. Ed Duncan, the president of the bank, and Mark Duncan, his son, the cashier, testified to the different transactions with appellee and stated that they had repeatedly requested appellee to take up his overdraft and that the payments made were for that particular purpose. They further testified that all of the items charged to appellee's account were authorized by him, with the possible exception of one or two, and that he had full knowledge that the payments had been credited on his overdraft. Appellee directly contradicted the statement of both these witnesses. Mark Duncan testified that while Rex Duncan was cashier of the Loogootee bank he requested him to send to appellee's bank

at Loogootee $2,000, which was done, and the same charged to the account of appellee. Appellee contended that Rex Duncan had no authority to get the money and that he had never received any credit for it at the Loogootee bank. Appellee was asked concerning the whereabouts of Rex Duncan and stated that he had gone away shortly after the case came up. Appellant objected to this testimony, but his objection was overruled. Appellee further testified that in a conversation at the bank he told Ed Duncan that "they had skinned me out of a lot of money," and "that Rex Duncan had done it."

William H. Warder, for appellant.

Denison & Spiller, for appellee.

Mr. Presiding Justice McBride delivered the opinion of the court.

## Abstract of the Decision.

1. Appeal and error, § 1410*—*when judgment not disturbed.* A judgment should not be reversed upon appeal unless it is manifestly against the weight of the evidence.

2. Payment, § 15*—*when finding sustained as to misapplication.* A finding that the officers of a bank improperly applied payments on an alleged overdraft of a customer instead of on a note which he owed to the bank, and that the customer was not indebted on such overdraft, is sustainable in an action by the bank on the note, where the entire evidence hinges upon statements of two officers of the bank as to the correctness of the application of payments and the amount of overdraft and the denial of such statements by defendant.

3. Banks and banking, § 145*—*what evidence admissible on claim of overdraft.* Evidence that a witness for the plaintiff had gone away shortly before the trial of a case involving a promissory note is admissible in an action by a bank against a customer on such note, where the defendant claimed that the plaintiff's officers had improperly applied payments on an alleged overdraft instead of on

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the note, and that he did not have as much of an overdraft as was claimed by the bank, and that such witness, who was the cashier of a bank for defendant at another town, had no authority to borrow money from the plaintiff and have it, charged to the defendant's account.

4. BANKS AND BANKING, § 145*—*what evidence admissible to rebut claim of overdraft.* In an action by a bank against a customer on a promissory note, and in which the correctness of an overdraft, the authority of an employee of defendant, who was cashier of defendant's bank in another town, to borrow money of plaintiff and charge it to defendant's account, and the alleged failure to credit payments on the note instead of on the overdraft were involved, evidence by the defendant as to a conversation, with an officer of the plaintiff regarding the correctness of the overdraft in which he stated that such cashier had "skinned" him out of a lot of money, is admissible, especially where both parties had testified concerning the correctness of the overdraft.

5. APPEAL AND ERROR, § 1523*—*when instruction harmless.* An instruction in an action by a bank against a customer on a note, the defense to which was that the bank had improperly applied payments on an alleged overdraft instead of on the note, and that the customer was not indebted on such overdraft, that if plaintiff had overcharged defendant's account without his permission or authority to an amount equal to a certain sum and defendant had not afterwards ratified the action of the bank in so doing then defendant would be entitled to have such sum credited on the note, criticized, but *held* to be harmless because of the fact that the entire overdraft was disputed, instead of part of it.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.